IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

OLA B. HARE                                                                                           PLAINTIFF

v.                              Case No. 4:09-cv-883-DPM

HARTFORD LIFE & ACCIDENT
INSURANCE CO. and COUNSELING
SERVICES OF EASTERN ARKANSAS                                             DEFENDANTS

ORDER

Ola B. Hare used to work for Counseling Services of Eastern Arkansas as a mental health paraprofessional. She claims that Hartford Life & Accident Insurance Company wrongfully terminated her long-term disability benefits under an ERISA plan that Counseling Services sponsored. 29 U.S.C.A. § 1002(1) (West 2008). She requests reinstatement of long-term disability benefits, an award of past benefits, pre-judgment interest, attorney's fees, and costs. The administrative record has been filed; Hartford has moved for judgment; Counseling Services has moved for dismissal for failure to state a claim; and all parties have submitted

briefs. This case is ripe for decision.

Hartford issued the policy to Counseling Services. In November 2005, Hare injured her back at work when she "picked up a [large] pan of chicken from a deep sink." Seven months later, Hare resigned from Counseling Services, citing an inability to perform her job. She applied for disability benefits in September of 2006. Hartford approved her claim under the policy's "own occupation" provision effective late September 2006. Hartford paid Hare benefits under this provision for two years.

In March 2008, Hartford told Hare that it was investigating whether she would qualify for benefits after September 2008, when the "any occupation" standard would apply. Hartford referred the file for an independent medical-records review by Dr. Dorothy Lowe, who concluded that Hare could work. A vocational rehabilitation counselor for Hartford also completed an employability analysis report about Hare. The report identified ten occupations that met her earnings requirements. Hartford concluded that Hare was not disabled under the "any occupation" provision. It informed Hare that her benefits would end in December 2008.

Hare appealed. Hartford referred her file to Dr. Robert Pick for a

second independent medical-records review. He also concluded that Hare was capable of working. Based on these two reviews and the vocational rehabilitation report, Hartford denied Hare's appeal. Having exhausted her remedies under the policy, Hare filed this lawsuit. 29 U.S.C.A. § 1132(a)(1)(B) (West 2009).

1. **Counseling Services of Eastern Arkansas.** Hare has sued both Hartford and Counseling Services of Eastern Arkansas. Counseling Services argues that it is not proper defendant in this case because Hartford had sole control of claims administration. Hartford admits as much in its brief, and Hare does not mention Counseling Services in her brief.

The proper defendant in an action under ERISA is the party that controls administration of the plan. *Layes v. Mead Corp.*, 132 F.3d 1246, 1249 (8th Cir. 1998). The policy language here is clear: "The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits." Further, all of Hare's communications about her benefits were with Hartford. There is no evidence in the record that Counseling Services played any role at all

in Hare's disability claim. Therefore, Counseling Services is not a proper defendant in this ERISA case; and Hare's claim against Counseling Services is dismissed for failure to state a claim.

**2. The Standard of Review.** When an ERISA plan authorizes the claims administrator to determine eligibility for benefits, the Court must decide whether the administrator abused its discretion in making its determination. *Darvell v. Life Insurance Co. of North America*, 597 F.3d 929, 934 (8th Cir. 2010). The Eighth Circuit has identified five factors that guide this analysis: (1) whether the administrator's interpretation is inconsistent with the plan's goals, (2) whether it is contrary to the plan's clear language, (3) whether it is inconsistent with prior interpretations of the same provisions, (4) whether it conflicts with the substantive or procedural requirements of ERISA, and (5) whether it renders the language of the plan meaningless, superfluous, or internally inconsistent. *Jones v. Reliastar Life Insurance Co.*, 615 F.3d 941, 945 (8th Cir. 2010). The ultimate question, however, is whether the administrator's interpretation was reasonable. *Ibid.* A reasonable decision is one "supported by substantial evidence." *Darvell*, 597 F.3d at 934.

4

The policy language grants Hartford the discretion to determine eligibility for benefits. Hare argues, however, that the Court should review Hartford's determination *de novo*. She contends this is the proper standard of review for two reasons: (1) Hartford has a conflict of interest; and (2) Hartford allegedly "gave little or no weight to the [Social Security Administration] award." Hartford argues that abuse of discretion is the correct standard.

A conflict of interest arises when the insurer also acts as the claims administrator. But this kind of conflict does not change the standard of review. Rather, the conflict of interest is a factor to be considered in determining whether the administrator abused its discretion. *Chronister v. Unum Life Insurance Co. of America*, 563 F.3d 773, 775 (8th Cir. 2009).

Further, ERISA plan administrators are not bound by the Social Security Administration's determination that a plan participant is disabled, even if the plan defines disability similarly. *Rutledge v. Liberty Life Assurance Co. of Boston*, 481 F.3d 655, 660–61 (8th Cir. 2007). Even if Hartford gave little or no weight to the SSA determination, as Hare contends, it was within Hartford's discretion to do so. Moreover,

Hartford's plan is not one that ties disability to the SSA's determination. *Cf. Chronister*, 563 F.3d at 776. Hare's arguments for *de novo* review fail. The Court will review Hartford's decision for an abuse of discretion.

3.  **Hartford's Decisions.** This Court must determine whether Hartford's denial of Hare's long-term benefits under the policy was reasonable based on the record as a whole. *Manning v. American Republic Insurance Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010). "Any reasonable decision will stand, even if the court would interpret the language differently as an original matter." *Manning*, 604 F.3d at 1038. Considering the record as a whole and the governing law, the Court concludes that Hartford did not abuse its discretion by denying Hare further benefits under the policy's "any occupation" provision. The policy, the medical records, and the vocational report all support this conclusion.

Hare was entitled to more benefits only if she was "disabled" under the policy. After the first twenty-four months of disability, the policy defines "disabled" as being "prevented from performing one or more of the Essential Duties of Any Occupation." The policy further defines "any occupation" as "an occupation for which you are qualified by education,

training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance."

In November 2008, Hartford determined that Hare did not meet the "any occupation" standard and thus was no longer "disabled" under the policy. It based its decision on independent medical-records reviews by two experienced doctors and a vocational rehabilitation report. Hartford was entitled to rely on this evidence. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003).

Dr. Dorothy Lowe reviewed Hare's case in October 2008. She consulted one of Hare's treating physicians and reviewed Hare's medical history and records. Dr. Lowe concluded that Hare could work: "Based on a physical perspective the claimant can work 8 hours a day for 5 days a week. She is able to sit, stand, and walk in the workplace for 8 hours a day." Dr. Lowe's only limitation was that Hare "would be restricted to lifting / carrying / pushing / pulling up to 20 pounds."

Sally Frenza, a vocational rehabilitation counselor, completed an

7

employability analysis report about Hare in November 2008. Frenza considered Hare's education, training, work history, and physical capabilities. She identified ten occupations that met Ms. Hare's earnings requirements. She also found that these occupations were prevalent in the national economy.

Dr. Robert Pick reviewed Hare's case in June 2009. He obtained information from Hare's two treating physicians.* The first treating physician, Dr. Glen Loveday, had diagnosed Hare with hypertension, degenerative joint disease, carpal tunnel syndrome, and obesity in June of 2008. The tests he conducted, however, did not reveal any significant back problems. The second treating physician, Dr. Gregory Ricca, saw Hare in September 2008. Dr. Ricca concluded that Hare's spine had "normal muscle tone and bulk with normal range of motion" and that her low back had "normal lordosis, normal muscle tone and bulk with [full range of

---

*The record contains no medical evidence about Hare's condition between August of 2006 (just before she was approved for benefits under the "own occupation" provision) and June of 2008. Hare told Hartford that she had not seen a doctor for a while because she did not have health insurance. After Hartford advised Hare that it was investigating her continued eligibility for benefits, Hare resumed medical treatment. She saw two doctors between June of 2008 and September of 2008.

motion]." Hare reported taking Ibuprofen occasionally to relieve her pain. Hare also requested that Dr. Ricca write a note to her personal trainer indicating that Hare could exercise.

After receiving this information and reviewing the remainder of Hare's case file, Dr. Pick concluded that "no significant substantive, objective orthopedic issues [were] present in this case" and that Hare's file contained no "substantive objective orthopedic findings . . . to substantiate or validate [her] description of ongoing subjective symptoms and complaints."

None of Hare's own doctors concluded that she was disabled from doing *any* work either. The opinions from her treating physicians in 2006 are consistent: Dr. Blake Ragsdale stated that Hare could return to regular duty. Dr. Terence Braden found that Hare had a "5% impairment to the whole person" and that she should "remain in her current work environment." Dr. Patrick Chan found that Hare had a 7% impairment of the whole person. Similarly, when Hare resumed treatment in 2008, neither of her doctors found that her back problems made her incapable of performing *any* work. As noted above, neither Dr. Loveday nor Dr. Ricca

9

found any abnormal back problems limiting Hare's ability to work.

The record as a whole shows that Hartford's decision was a reasonable one. On that record, Hare can do some available jobs. Hartford therefore did not abuse its discretion when it determined that Ms. Hare was not disabled within the meaning of the "any occupation" provision.

Hare takes issue with the fact that, when Hartford conducted its "any occupation" review, it essentially concluded that she was capable of performing her own occupation again. Hare contends that this was an abuse of discretion because there was no evidence of any change in her condition. Hare relies heavily on medical records from 2005 and 2006. The question before Hartford, however, was whether Ms. Hare was disabled under the "any occupation" standard in 2008. The sparse records from the two-year period during which Hare received benefits under the "own occupation" standard show that she was functioning normally and was no longer significantly impaired by her 2005 back injury. In light of this evidence, and the 2008/2009 evidence, Hartford's final no-disability conclusion was reasonable.

**4. Additional Exhibits on Conflict of Interest.** Hare argues that Dr. Pick's relationship with Hartford created a conflict of interest. She therefore urges the Court to disregard Dr. Pick's report. On this issue Hare asks the Court to consider three exhibits attached to her brief. This evidence is not in the administrative record. Hartford objects, citing the general rule discouraging additional evidence on deferential review. *E.g., Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641-42 (8th Cir. 1997).

The Court has considered the new materials because good cause exists to do so: the exhibits are offered to show a collusive or corrupt relationship between Dr. Pick and Hartford; and evidence of this kind of conflict may not be evident from the administrative record alone. "Certain kinds of claims—*e.g.*, proof of corruption—may in their nature or timing take a reviewing court to materials outside the administrative record." *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 23 (1st Cir. 2003).

Exhibit A shows that Dr. Pick performs lots and lots of work for Hartford and other disability insurers. Exhibit B is an excerpt from Dr. Pick's deposition in another case. Hare points specifically to Dr. Pick's assertion that a "treating physician is the patient's advocate" while he, as

11

the independent reviewer, is "trying to give the objective outlook on the situation." Finally, Exhibit C is an opinion from the United States District Court for the Central District of California in which the court gave "significant" weight to a conflict of interest between Hartford and University Disability Consortium (Dr. Pick's employer) under the circumstances of that case. As a decision, this of course is non-binding legal authority; but the Court takes Hare's intention to be that the Court consider the conflict facts embedded in the decision.

The Court concludes that Hare has not presented any substantial evidence that Dr. Pick and Hartford had the kind of collusive relationship that would support disregarding Dr. Pick's report. An insurer/administrator conflict exists in this case; and it is a factor in the Court's analysis. That factor's weight, however, depends on the circumstances presented. "A conflict of interest can act as a tiebreaker when the issue is close, and can assume great importance where circumstances suggest a higher likelihood that it affected the benefits decision." *Reliastar*, 615 F.3d at 946 (internal quotations omitted).

This is not a close case. Neither Hare's own doctors nor Hartford's

concluded that she could not work at all. So the conflict does not break a tie in the proof in Hare's favor. The Court recognizes for whom Dr. Pick does most of his work; but given the heavy weight of the proof against disability apart from Dr. Pick's opinion, the Court sees no likelihood that Dr. Pick's opinion here was the bad fruit of his ties with Hartford.

\* \* \*

In summary, Counseling Services is not a proper defendant in this case. And Hartford acted reasonably in denying Hare benefits under the "any occupation" provision. Hare is not entitled to reinstatement of long-term disability benefits, an award of past benefits, or any other relief.

So Ordered.

*[signature]*
D.P. Marshall Jr.
Untied States District Judge

27 Oct. 10